# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs July 8, 2015

## FREDDIE ODELL NORRIS v. SUSAN MARGURIETE NORRIS

### Appeal from the Probate and Family Court for Cumberland County
#### No. 2014PF3898     Larry Warner, Judge

---

### No. E2014-02353-COA-R3-CV-FILED-AUGUST 24, 2015

---

This appeal arises from a divorce. Freddie Odell Norris ("Husband") sued Susan Marguriete Norris ("Wife") for divorce in the Probate and Family Court for Cumberland County ("the Trial Court"). The Trial Court granted a divorce to Husband on the ground of irreconcilable differences and ordered him to pay transitional alimony. Wife appeals to this Court, raising a number of issues. We amend the divorce decree to modify the grounds for divorce, modify the alimony type from transitional to in futuro, and remand this case for a calculation of reasonable attorney's fees for Wife. The judgment of the Trial Court is modified and this matter is remanded to the Trial Court for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate and Family Court Modified; Case Remanded

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and THOMAS R. FRIERSON, II, JJ., joined.

Holly A. Lee, Crossville, Tennessee, for the appellant, Susan Marguriete Norris.

William T. Ridley, Crossville, Tennessee, for the appellee, Freddie Odell Norris.

# OPINION

## Background

After approximately 20 years of marriage, Husband sued Wife for divorce in the Trial Court in May 2014. No children were born of the marriage. Both parties were around age 50. Husband alleged inappropriate marital conduct and irreconcilable differences as grounds for divorce. Wife filed an answer and counterclaim for divorce, alleging adultery, inappropriate marital conduct, abandonment, and irreconcilable differences as grounds. The parties engaged in Rule 31 mediation. The parties resolved their issues except as to fault, alimony and attorney's fees. This case was tried on these remaining issues in October 2014.

Wife testified to her background. Wife had earned a high school diploma. Wife worked full-time at Food City for the first ten to eleven years of the marriage. Wife then held part-time employment through 2010. When not employed, Wife continued to make significant financial contributions to the marriage with funds inherited from her father late in the marriage. Wife deposited her inheritance disbursements into the parties' joint bank account. After receiving the inheritance, the parties spent a great deal of money on a variety of personal items. The parties also owned a mobile home. The property was encumbered by a $39,000 mortgage, exceeding its value. Husband had a small retirement account. The parties held $13,000 in a savings account at the time Husband left the home. Regarding her health, Wife testified to her history of depression. Wife's grandmother had committed suicide. After the parties' separation, Wife contemplated suicide. Wife later found work in the form of a part-time job at 15 hours per week at Fairfield Glade Community Center. Wife's expenses totaled $1,400 per month. Wife had searched unsuccessfully for better paying work.

Husband testified. Husband had earned a GED. Soon after marrying Wife, Husband began work for Wyndham. Husband now is head of the construction department and earns a salary of $61,000 per year. A major point of contention between the parties was marital intimacy. According to Husband, the parties had not had sex in the last seven or eight years of the marriage. According to Wife, it had been around one year since the parties last had sex. The parties also argued over money matters. Husband testified that Wife was not performing her "wifely duties," meaning sex, and was not cleaning the house. Shortly after the separation from Wife, Husband began cohabitating with another woman. Husband went on hunting trips and other excursions, some of which were costly. Husband stated that his net income was $3,809 per month, and that his expenses were around the same amount. Some of Husband's obligations went towards rent and utilities. Husband also had suffered from a pituitary tumor.

In February 2015, the Trial Court entered its amended final decree of divorce, stating as follows therein:

This cause came to be heard on the 29th day of October, 2014, in the Probate and Family Court for Cumberland County, Tennessee, before the Honorable Judge Larry Warner. Based on testimony of the Parties and witnesses, arguments of counsel, and considering the record as a whole, the Court does find:

1. That the Plaintiff, Freddie Odell Norris, is hereby granted an absolute divorce from the Defendant, Susan Marguriete Norris, on the grounds of irreconcilable differences. Both Parties are hereby restored to all rights and privileges of unmarried persons.
2. That the Court affirmatively adopts and approves the stipulated and attached property settlement agreement (Exhibit A)
3. After considering all relevant factors contained within Tennessee Code Annotated § 36-5-121, as well as the testimony of the Parties and arguments of counsel, the Defendant, Susan Marguriete Norris, is entitled to transitional alimony in the amount of $500.00 per month beginning November 1, 2014, and continuing for a period of one (1) year.
4. That each Party shall be responsible for their own reasonable attorney fees.
5. Each attorney, after providing good and valuable services, is hereby relieved of any other and further duties as it relates to this matter within 30 days of entry of this Order.
6. That all costs associated with this proceeding are hereby taxed to each Party equally for which execution may issue if necessary.

Under the agreement between the parties as to property division, Wife retained the marital residence. Wife filed a timely appeal to this Court.

**Discussion**

Although not stated exactly as such, Wife raises the following four issues on appeal: 1) whether the Trial Court erred in failing to make adequate findings of fact and conclusions of law; 2) whether the Trial Court erred in granting Husband a divorce on the ground of irreconcilable differences; 3) whether the Trial Court erred in the type, duration, and amount of alimony it awarded Wife; and, 4) whether the Trial Court erred in declining to award attorney's fees to Wife.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in failing to make adequate findings of fact and conclusions of law. The Trial Court's order in this case was, indeed, sparse in its findings. Without findings of fact from a trial court, we have nothing upon which to presume correctness. Regarding how this Court may proceed when confronted with limited findings of fact and conclusions of law, we have stated:

> We note . . . that Rule 52.01 of the Tennessee Rules of Civil Procedure requires the trial court to state expressly its findings of fact and conclusions of law, even where the parties do not request it. Tenn. R. Civ. P. 52.01. If the trial court fails to do so, its decision is normally vacated and the cause remanded for such findings and conclusions; however, the appellate court may, in some circumstances, "soldier on" in the absence of them. *See Town of Middleton v. City of Bolivar*, No. W2011-01592-COA-R3-CV, 2012 WL 2865960, at *26 (Tenn. Ct. App. July 13, 2012).

*In re: S.J.*, 387 S.W.3d 576, 594 n. 9 (Tenn. Ct. App. 2012).

In our judgment, this is a case in which we can "soldier on" despite the absence of detailed findings of fact. We have available to us a record consisting of a technical record, a volume of transcript, and exhibits. We are not so inhibited by the Trial Court's limited order so as to be unable to resolve the issues on appeal. In the interest of judicial economy and to save the parties additional expenses, we elect to proceed and make our own determinations regarding where the preponderance of evidence lies as necessary.

We next address whether the Trial Court erred in granting Husband a divorce on the ground of irreconcilable differences. Regarding the ground of irreconcilable differences, Tennessee law provides in part:

> No divorce shall be granted on the ground of irreconcilable differences unless the court affirmatively finds in its decree that the parties have made adequate and sufficient provision by written agreement for the custody and maintenance of any children of that marriage and for the equitable settlement of any property rights between the parties. If the court does not

-4-

affirmatively find that the agreement is sufficient or equitable, the cause shall be continued by the court to allow further disposition by the petitioner. If both parties are present at the hearing, they may, at that time, ratify any amendments the court may have to the agreement. The amended agreement shall then become a part of the decree. The agreement shall be incorporated in the decree or incorporated by reference, and such decree may be modified as other decrees for divorce.

Tenn. Code Ann. § 36-4-103(b)(2014).

Wife argues that the Trial Court erred in granting Husband a divorce on the ground of irreconcilable differences because the divorce was contested and fault was at issue. Initially, we note that this appeal does not rise or fall on this particular issue. Both parties asked for and plainly want a divorce. Nevertheless, the issue of grounds for divorce has been raised properly, and we will consider it. We agree with Wife that, under the evidence, irreconcilable differences was not a suitable ground for divorce. In the alternative, both parties alleged inappropriate marital conduct as a ground for divorce. This Court has described inappropriate marital conduct as follows:

Inappropriate marital conduct can be found when "[t]he husband or the wife is guilty of such cruel and inhuman treatment or conduct towards the spouse as renders cohabitation unsafe and improper...." Tenn. Code Ann. § 36-4-101(11) (2001); *see Eldridge v. Eldridge*, 137 S.W.3d 1, 23-24 (Tenn. Ct. App. 2002). Thus, inappropriate marital conduct is established when "either or both of the parties [have] engaged in a course of conduct which (1) caused pain, anguish or distress to the other party and (2) rendered continued cohabitation 'improper,' 'unendurable,' 'intolerable,' or 'unacceptable.'" *Eldridge*, 137 S.W.3d at 24 (quoting *Earls v. Earls*, 42 S.W.3d 877, 892 (Tenn. Ct. App. 2000) (Cottrell, J., concurring)).

*Chaffin v. Ellis*, 211 S.W.3d 264, 289 (Tenn. Ct. App. 2006).

The evidence in the record shows that neither party was faultless in the breakdown of their marriage. Indeed, Wife testified that some fault was hers. We find a preponderance of the evidence in the record shows that both parties engaged in inappropriate marital conduct. In situations where both parties are at fault and there exists proof of any ground for divorce, Tennessee law provides the following option:

(a) In all actions for divorce from the bonds of matrimony or legal separation the parties may stipulate as to grounds and/or defenses.

-5-

(b) The court may, upon stipulation to or proof of any ground of divorce pursuant to § 36-4-101, grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce or if a divorce is to be granted on the grounds of irreconcilable differences, declare the parties to be divorced, rather than awarding a divorce to either party alone.

Tenn. Code Ann. § 36-4-129 (2014).

In light of our finding regarding both parties' inappropriate marital conduct, we amend the Trial Court's judgment to declare the parties to be divorced, rather than grant a divorce to either party alone.

We next address whether the Trial Court erred in the type, duration and amount of alimony it awarded Wife. Our Supreme Court has discussed awards of spousal support as follows:

> This Court has frequently recognized that trial courts in Tennessee have broad discretion to determine whether spousal support is needed and, if so, to determine the nature, amount, and duration of the award. *See Gonsewski*, 350 S.W.3d at 105; *Bratton v. Bratton*, 136 S.W.3d 595, 605 (Tenn. 2004); *Burlew v. Burlew*, 40 S.W.3d 465, 470 (Tenn. 2001); *Crabtree v. Crabtree,* 16 S.W.3d 356, 360 (Tenn. 2000). Because a trial court's "decision regarding spousal support is factually driven and involves the careful balancing of many factors," *Gonsewski*, 350 S.W.3d at 105 (footnote omitted), the role of an appellate court is not to second guess the trial court or to substitute its judgment for that of the trial court, but to determine whether the trial court abused its discretion in awarding, or refusing to award, spousal support. *Id.* "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice." *Id.* (citing *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011); *Henderson v. SAIA, Inc.*, 318 S.W.3d 328, 335 (Tenn. 2010)). In determining whether the trial court abused its discretion, an appellate court "should presume that the [trial court's] decision is correct and should review the evidence in the light most favorable to the decision." *Gonsewski*, 350 S.W.3d at 105-06; *see also* Tenn. R. App. P. 13(d) ("[R]eview of findings of fact by the trial court in civil actions shall be de novo upon the record of the trial court, accompanied by a presumption of the correctness of the finding [s], unless the preponderance of the evidence is otherwise.").

***

Tennessee recognizes four distinct types of spousal support: (1) alimony in futuro, (2) alimony in solido, (3) rehabilitative alimony, and (4) transitional alimony. Tenn. Code Ann. § 36-5-121(d)(1) (2010 & Supp. 2012). Alimony in futuro, a form of long-term support, is appropriate when the economically disadvantaged spouse cannot achieve self-sufficiency and economic rehabilitation is not feasible. *Gonsewski*, 350 S.W.3d at 107. Alimony in solido, another form of long-term support, is typically awarded to adjust the distribution of the marital estate and, as such, is generally not modifiable and does not terminate upon death or remarriage. *Id*. at 108. By contrast, rehabilitative alimony is short-term support that enables a disadvantaged spouse to obtain education or training and become self-reliant following a divorce. *Id*.

Where economic rehabilitation is unnecessary, transitional alimony may be awarded. Transitional alimony assists the disadvantaged spouse with the "transition to the status of a single person." *Id*. at 109 (internal quotation marks omitted). Rehabilitative alimony "is designed to increase an economically disadvantaged spouse's *capacity* for self-sufficiency," whereas "transitional alimony is designed to aid a spouse who already possesses the capacity for self-sufficiency but needs financial assistance in adjusting to the economic consequences of establishing and maintaining a household without the benefit of the other spouse's income." *Id*. Consequently, transitional alimony has been described as a form of short-term "bridge-the-gap" support designed to "smooth the transition of a spouse from married to single life." *Engesser v. Engesser*, 42 So.3d 249, 251 (Fla. Dist. Ct. App. 2010).

***

Tennessee statutes concerning spousal support reflect a legislative preference favoring rehabilitative or transitional alimony rather than alimony in futuro or in solido. *See* Tenn. Code Ann. § 36-5-121(d)(2)-(3); *Gonsewski*, 350 S.W.3d at 109. Not even long-term support is a guarantee that the recipient spouse will be able to maintain the same standard of living enjoyed before the divorce because "two persons living separately incur more expenses than two persons living together." *Gonsewski*, 350 S.W.3d at 108 (quoting *Kinard v. Kinard*, 986 S.W.2d 220, 234 (Tenn. Ct. App. 1998)). Although the parties' standard of living is a factor courts

must consider when making alimony determinations, *see* Tenn. Code Ann. § 36-5-121(i)(9), the economic reality is that the parties' post-divorce assets and incomes often will not permit each spouse to maintain the same standard of living after the divorce that the couple enjoyed during the marriage. *Gonsewski*, 350 S.W.3d at 113. Decisions regarding the type, length, and amount of alimony turn upon the unique facts of each case and careful consideration of many factors, with two of the most important factors being the disadvantaged spouse's need and the obligor spouse's ability to pay. *Id.* at 109-10.

*Mayfield v. Mayfield*, 395 S.W.3d 108, 114-16 (Tenn. 2012).

There are a number of statutory factors to be considered in determining the nature and amount of alimony:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;

(3) The duration of the marriage;

(4) The age and mental condition of each party;

(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;

(7) The separate assets of each party, both real and personal, tangible and intangible;

(8) The provisions made with regard to the marital property, as defined in § 36-4-121;

(9) The standard of living of the parties established during the marriage;

(10) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and

(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

Tenn. Code Ann. § 36-5-121(i) (2014).

The Trial Court awarded Wife $500 per month for twelve months in transitional alimony. On appeal, Wife argues that this spousal support award is insufficient. Several relevant statutory factors come into play. Wife has not worked full-time in a number of years. Wife did contribute her not insignificant inheritance to the marriage, and both parties spent that money to maintain their standard of living during the marriage. While Wife's inheritance now is gone, Husband still retains his job and ability to earn $61,000 per year. This was a 21 year marriage. Wife earns a meager $7.80 per hour. Meanwhile, Husband earns $61,000 per year, and took years to rise to that income level.

Trial courts have wide latitude in arriving at decisions regarding spousal support, and we are not inclined to tweak or second-guess trial courts on spousal support matters. In this case, however, the Trial Court made no detailed findings of facts to support its decision. It is unclear to us how the Trial Court apparently concluded that Wife would be capable of transitioning to an economic status on par with Husband post-divorce given her comparatively modest earning history. While long-term spousal support is disfavored, it is still available in those cases where it is appropriate. We believe this to be such a case. We note that Husband fully participated with Wife in spending her separate inheritance during the last few years of the marriage to maintain their standard of living. While Wife appears to be able to work full-time, it is clear from the record that, even were she to obtain full-time employment, she clearly still would be at an economic disadvantage to Husband. Under this record, Wife clearly has the financial need for and Husband just as clearly has the ability to pay the $500 per month. Therefore, we modify the type of alimony awarded Wife from transitional alimony to alimony in futuro. We do not disturb the amount of alimony awarded, that of $500 per month.

The final issue we address is whether the Trial Court erred in declining to award attorney's fees to Wife. With respect to the award of attorney's fees in divorce cases, our Supreme Court has stated:

It is well-settled that an award of attorney's fees in a divorce case constitutes alimony in solido. The decision whether to award attorney's fees is within the sound discretion of the trial court. As with any alimony award, in deciding whether to award attorney's fees as alimony in solido, the trial court should consider the factors enumerated in Tennessee Code Annotated section 36-5-121(i). A spouse with adequate property and income is not entitled to an award of alimony to pay attorney's fees and expenses. Such awards are appropriate only when the spouse seeking them lacks sufficient funds to pay his or her own legal expenses or the spouse would be required to deplete his or her resources in order to pay them. Thus, where the spouse seeking such an award has demonstrated that he or she is financially unable to procure counsel, and where the other spouse has the ability to pay, the court may properly grant an award of attorney's fees as alimony.

*Gonsewski v. Gonsewski*, 350 S.W.3d 99, 113 (Tenn. 2011) (citations omitted).

Our analysis on this issue is similar to that of the alimony issue. Wife clearly is the economically disadvantaged spouse. She has displayed financial hardship, lacks the ability to pay her legal expenses, and Husband has the ability to pay. Wife should not be made to deplete her relatively limited resources. We hold that the Trial Court erred in declining to award Wife her attorney's fees. We remand this case to the Trial Court to calculate a reasonable award of attorney's fees to Wife.

In summary, we amend the Trial Court's judgment to declare the parties to be divorced, rather than award a divorce to either party alone. We modify the type of alimony awarded to Wife from transitional alimony to alimony in futuro, although we do not disturb the amount of alimony, $500 per month. With respect to attorney's fees, we remand this case to the Trial Court for a calculation of reasonable attorney's fees to Wife. Given our resolution of the issues on appeal and considering our modification of the Trial Court's judgment, we decline to award either side their attorney's fees incurred on appeal.

## Conclusion

The judgment of the Trial Court is modified, and this cause is remanded to the Trial Court for further proceedings consistent with this Opinion, and for collection of the costs below. The costs on appeal are assessed against the Appellee, Freddie Odell Norris.

_____
D. MICHAEL SWINEY, JUDGE